UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID HARNESS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 21-cv-10233-ADB |
| ANGIODYNAMICS, INC. and NAVILYST MEDICAL, INC., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Plaintiff David Harness alleges that he was injured by a defective medical device made by Defendants AngioDynamics, Inc. ("AngioDynamics") and Navilyst Medical, Inc. ("Navilyst," and, together with AngioDynamics, "Defendants"). [ECF No. 1-3]. Currently before the Court are Mr. Harness' motion for remand, [ECF No. 17], and Defendants' motion to dismiss for lack of personal jurisdiction, [ECF No. 9]. For the reasons set forth below, Mr. Harness' motion is <u>DENIED</u>, and Defendants' motion is <u>GRANTED</u>. Mr. Harness' complaint is <u>DISMISSED</u> without prejudice.

I.  **BACKGROUND**

   A.  **Factual Background**

The following facts are taken primarily from the complaint, [ECF No. 1-3], the factual allegations of which are assumed to be true when considering a motion to dismiss, <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014).

Mr. Harness is a Tennessee resident. [ECF No. 1-3 ¶ 2]. AngioDynamics and Navilyst are both Delaware corporations.[1] [Id. ¶¶ 3–4].

In or around 2013, Defendants received clearance from the U.S. Food and Drug Administration to market and sell a vascular access device called the BioFlo (the "Device"). [ECF No. 1-3 ¶ 15]. The Device is designed to deliver medication, intravenous fluids, parenteral nutrition solutions, and blood products directly into the bloodstream. [Id. ¶ 18]. The Device has two parts: an injection port and a polyurethane catheter. [Id. ¶ 20]. Because of an alleged design and manufacturing defect, the catheter sometimes fractures. [Id. ¶¶ 23–29]. If a catheter fractures, the results can be life-threatening. See [id. ¶ 37]. Years before Mr. Harness was implanted with the Device, Defendants received numerous adverse event reports indicating that catheters were fracturing and pieces were migrating through users' bodies, with catastrophic consequences. [Id. ¶ 38].

On July 31, 2019, Mr. Harness was implanted with the Device at a hospital in Tennessee. [ECF No. 1-3 ¶ 47]. On January 8, 2020, the Device, and fractured fragments from its catheter, were surgically removed from Mr. Harness also at a hospital in Tennessee. [Id. ¶ 48]. As a result of the Device fracturing, Mr. Harness experienced significant mental and physical pain and suffering, sustained physical injuries and permanent physical deformities, underwent (and will undergo additional) corrective surgery, and suffered financial and economic losses (including medical expenses and lost wages). [Id. ¶ 56].

---

[1] As discussed infra, the parties dispute whether Defendants' principal places of business are in New York or Massachusetts.

### B. Procedural Background

Mr. Harness filed this suit in Middlesex County Superior Court on December 23, 2020. [ECF No. 1-3]. On February 11, 2021, Defendants removed the case. [ECF No. 1]. On February 18, 2021, Defendants moved to dismiss based on lack of personal jurisdiction. [ECF No. 9]. Mr. Harness opposed on March 11, 2021, [ECF No. 14], and Defendants replied on April 5, 2021, [ECF No. 21]. Additionally, Mr. Harness filed a motion for remand on March 12, 2021, [ECF No. 17], which Defendants opposed on April 9, 2021, [ECF No. 22]. On April 28, 2021, Mr. Harness filed a notice of supplemental authority, [ECF No. 25], to which Defendants responded on May 3, 2021, [ECF No. 28]. On July 22, 2021, Defendants filed a notice of supplemental authority of their own. [ECF No. 31 (notice); ECF No. 31-1 (authority)]. Finally, on September 1, 2021, Mr. Harness filed a motion to consolidate this case with four similar cases also before the Court, [ECF No. 32], which the Court will address in a separate Order.

## II. MR. HARNESS' MOTION FOR REMAND

Defendants removed this case based on diversity jurisdiction. See [ECF No. 1 at 2–5]. "Federal diversity jurisdiction is available in cases arising between citizens of different states in which the amount in controversy exceeds $75,000." Rizzi v. 178 Lowell St. Operating Co., 180 F. Supp. 3d 66, 67 (D. Mass. 2016) (citing 28 U.S.C. § 1332(a)). Mr. Harness concedes that the diversity and amount-in-controversy requirements are met here but maintains that because Defendants are Massachusetts citizens, removal is prohibited by the "forum defendant rule." [ECF No. 16 at 3 (emphasis omitted)]. Defendants respond that the "forum defendant rule" is inapplicable because they are not Massachusetts citizens. [ECF No. 22 at 8–15].

Where, as here, removal is premised on diversity jurisdiction, it is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such

3

action is brought." 28 U.S.C. § 1441(b).  "This is known as the 'forum defendant rule.'" DaSilva v. Germany, No. 19-cv-11184, 2021 WL 210788, at *2 (D. Mass. Jan. 21, 2021) (quoting Rizzi, 180 F. Supp. 3d at 68)).  "A corporation's citizenship, for diversity jurisdiction purposes, is both the state where it is incorporated and the state 'where it has its principal place of business.'"  Celli v. Greenwich Ins. Co., 478 F. Supp. 3d 93, 95–96 (D. Mass. 2020) (quoting 28 U.S.C. § 1332(c)(1)).

Mr. Harness does not dispute (and, in fact, specifically avers) that Defendants are incorporated in Delaware.  [ECF No. 1-3 ¶¶ 3–4].  In his complaint, he alleges that AngioDynamics and Navilyst have their principal places of business in New York and Massachusetts, respectively.  [Id.].  Nevertheless, in his briefs, he contends that both Defendants have their principal places of business in Massachusetts.  See [ECF No. 16 at 3–7].  Although the Court could treat Mr. Harness' allegation that AngioDynamics' principal place of business is in New York as a binding judicial admission (and focus exclusively on Navilyst), see Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992), it need not do so here because, for the reasons that follow, the Court finds that both AngioDynamics and Navilyst clearly have their principal places of business in New York.

> Several years ago, the Supreme Court established beyond any doubt that federal courts must employ the "nerve center" test to determine the location of a corporation's principal place of business.  The test is straightforward.  A corporation's "nerve center" (i.e., its principal place of business) is the particular location from which its "officers direct, control, and coordinate the corporation's activities."  Generally speaking, this will "be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."

Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 40 (1st Cir. 2016) (citations omitted) (quoting Hertz Corp. v. Friend, 559 U.S. 77, 80–81, 92–93 (2010)).  "At its heart, the nerve center test is an inquiry to find the one location from which a corporation is ultimately controlled."  Id. at 41.

Applying the nerve center test to the facts at hand leads to the conclusion that Defendants' principal places of business are in New York.  According to an affidavit filed by Stephen A. Trowbridge, AngioDynamics' Executive Vice President and CFO: (1) Navilyst is a wholly-owned subsidiary of AngioDynamics, [ECF No. 21-1 ¶ 6]; (2) Navilyst's U.S. operations are "entirely carried out and controlled by AngioDynamics," [id. ¶ 9]; (3) the individuals working on Navilyst's behalf in the United States are actually AngioDynamics' employees, [id. ¶ 10]; (4) AngioDynamics' chief executives (including its CEO, CFO, and General Counsel) and its accounting, legal, and human resources departments are based in New York, [id. ¶ 8]; and (5) all significant corporate decisions, for both AngioDynamics and Navilyst, are made, or are reviewed and approved, by executives based in New York, [id. ¶ 11].  Thus, based on this uncontroverted evidence, the Court finds that Defendants are "ultimately controlled" from New York.  See Harrison, 811 F.3d at 41.

Mr. Harness offers evidence purportedly demonstrating that Defendants have their principal places of business in Massachusetts.  [ECF No. 16 at 3–7].  The Court has already rejected nearly-identical evidence in a nearly-identical case, see Memorandum and Order at 6–7, Pettit v. AngioDynamics, Inc., 21-cv-10568 (D. Mass. Sept. 28, 2021), ECF No. 26, and sees no reason to reach a different result here.  In short, although Mr. Harness repeatedly asserts that Defendants' principal places of business are in Massachusetts, see, e.g., [ECF No. 16 at 2, 3; ECF No. 14 at 4], the evidence belies his position.  Because Defendants' principal places of

business are not in Massachusetts, the forum defendant rule does not preclude removal.

Mr. Harness' motion for remand, [ECF No. 17], is therefore DENIED.

### III. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The parties dispute whether Defendants are subject to the Court's personal jurisdiction. See [ECF No. 9; ECF No.14]. For the reasons below, the Court finds that they are not.

#### A. Legal Standard

Mr. Harness bears the burden of establishing that jurisdiction exists over Defendants. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, the plaintiff must proffer "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp., 812 F.3d at 58 (quoting Prairie Eye Ctr., 530 F.3d at 26). "[P]laintiffs may not rely on unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of specific facts" supporting jurisdiction. Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The Court takes as true whatever properly documented facts a plaintiff proffers, construes those facts in the light most favorable to the plaintiff, and considers facts put forward by the defendant only to the extent that they are uncontradicted. See Prairie Eye Ctr., 530 F.3d at 26; Platten, 437 F.3d at 134.

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). "Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the due process clause of the Constitution." Kingston v. AngioDynamics, Inc., No. 21-cv-10234, 2021 WL 3022320, at *5 (D. Mass. July 16, 2021) (citing Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997)).

### B. Jurisdiction Under the Massachusetts Long-Arm Statute

"Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017). Section 3 of the Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from" various activities within or outside of the Commonwealth. Mass. Gen. Laws ch. 223A, § 3.

Mr. Harness relies on § 3(a) of the Massachusetts long-arm statute, see [ECF No. 14 at 8–9], which provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth . . . ." Mass. Gen. Laws ch. 223A, § 3(a). Section 3(a)'s "reference to 'transacting any business' does not require that the defendant have engaged in commercial activity. That language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." Ealing Corp. v. Harrods Ltd., 790 F.2d

978, 982 (1st Cir. 1986) (quoting Ross v. Ross, 358 N.E.2d 437, 439 (Mass. 1976)).  "[T]he defendant's involvement need not be major, as 'just a few acts on [his] part can often suffice to satisfy [subsection (a)]'s threshold for transacting business.'"  Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008) (quoting Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D. Mass. 2003)).  "The 'arising from' clause in [the Massachusetts long-arm statute] is . . . generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test."  Workgroup Tech. Corp., 246 F. Supp. 2d at 112.  "[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State."  Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Tatro, 625 N.E.2d at 553).  The arising from inquiry asks whether "the defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury."  Id. (internal quotation marks omitted) (quoting Lyle Richards Int'l, Ltd., 132 F.3d at 114).

Defendants transact business in Massachusetts.  They have an office in Marlborough, Massachusetts and a number of employees who work here.  See [ECF No. 14-7; ECF No. 14-8 at 2].  Nevertheless, personal jurisdiction is not proper under § 3(a) because Mr. Harness' claims do not arise from Defendants' business in Massachusetts.  Mr. Harness maintains that his claims are tied to Defendants' business activities in Massachusetts because "[b]ut for Defendants' actions and omissions occurring within the Commonwealth, the [Device] never would have made it to the medical facility where it was ultimately implanted in [Mr. Harness] and caused his injury." [ECF No. 14 at 9].  Additionally, he asserts, without citation to any specific facts, that "a significant portion of the actions required to get the [Device] to market took place in Marlborough, Massachusetts."  [Id.].  Mr. Harness cannot, however, rely on self-serving,

8

conclusory statements to establish jurisdiction.  See Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).  Rather, he must adduce specific evidence suggesting that Defendants' business activities in Massachusetts were the first step in a chain of events leading to his injuries.  He has not done so.  Viewed favorably, Mr. Harness' evidence demonstrates that Defendants have a presence in Massachusetts and conduct some business here.  Importantly, none of his evidence suggests that any of Defendants' Massachusetts business activities actually relate to the Device or his claims.[2]  Mr. Harness' theory seems to be that because Defendants (1) design, manufacture, advertise, market, and sell medical devices in Massachusetts and (2) the Device is a medical device designed, manufactured, advertised, marketed, and sold by Defendants, Defendants must have designed, manufactured, advertised, marketed, and sold the Device in Massachusetts.  See [ECF No. 14 at 10].  That theory fails, however, without evidence specifically tying the design, manufacture, advertisement, marketing, and/or sale of *the Device* to Massachusetts (or indicating that Defendants' design, manufacturing, advertising, marketing, and/or sales activities for *all* medical devices are based in Massachusetts).  Here, Mr. Harness has pointed to none.[3]  Notably, Mr. Trowbridge's affidavit establishes that all significant

---

[2] The Court acknowledges that the Device's instructions list the manufacturer as "Navilyst Medical, Inc. 26 Forest Street, Marlborough, MA 01752."  [ECF No. 14-8 at 2; ECF No. 16-5 at 2 (duplicate exhibit)].  In light of Mr. Trowbridge's sworn statement that, notwithstanding the instructions, the Device was manufactured in New York, [ECF No. 21-1 ¶ 17], that fact is insufficient to demonstrate that Mr. Harness' claims arise from Defendants' business activities in Massachusetts.

[3] None of Mr. Harness' exhibits demonstrate that Defendants' Device-related activities took place in Massachusetts.  See [ECF Nos. 14-1, 14-2, 14-3, 14-4, 14-5, 14-6, 14-7, 14-8, 14-9, 14-10, 16-1, 16-2, 16-3, 16-4, 16-5, 16-6, 16-7, 16-8, 16-9, 16-10, 16-11].  At most, they indicate that Defendants (1) have some marketing, research and development, and regulatory personnel located in Massachusetts, see [ECF No. 14-7 at 2–6], and (2) listed a Massachusetts address on some regulatory filings and the Device's instructions, see [ECF No. 14-1 at 2; ECF No. 14-8 at 2; ECF No. 14-9 at 2; ECF No. 14-10 at 2].  Notably, they do not suggest that Defendants designed, tested, made, or marketed the Device in and/or from Massachusetts.  Further, even the

corporate decisions are made in New York and all U.S. products (including the Device) are manufactured in New York. [ECF No. 21-1 ¶¶ 11–12]. Against this backdrop, Mr. Harness has failed to show the required link between his claims and Defendants' Massachusetts contacts. Accordingly, the Court does not have jurisdiction over Defendants pursuant to the Massachusetts long-arm statute.

### C. Jurisdiction Under the U.S. Constitution

Although the Court could stop the analysis here, it will briefly consider jurisdiction under the U.S. Constitution in the interests of a comprehensive record.

Courts may exercise two types of personal jurisdiction under the Due Process Clause of the Fourteenth Amendment: general and specific. The Court discusses each in turn.

#### 1. General Jurisdiction

"[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render [a person] essentially at home in the forum State.'" Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Although the "paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of

---

complaint's allegations on this issue are strangely worded and ambiguous. See [ECF No. 1-3 ¶ 12 ("Defendants were engaged in the business of designing, manufacturing, advertising, marketing, and selling Vascular Access Devices including the [Device], and in pursuit of this business, transacted business within the Commonwealth of Massachusetts and contracted to provide goods and services in the Commonwealth of Massachusetts.")]. At the end of the day, Mr. Harness relies on his attorneys' arguments and unsworn representations, see, e.g., [ECF No. 14 at 8 ("This test is met here: but for AngioDynamics', together with its wholly owned subsidiary Navilyst's Massachusetts activities including research, develop, design, market and sell products in the United States, [Mr. Harness] would not have been injured."); id. at 9 ("In this case, a significant portion of the actions required to get the [Device] to market took place in Marlborough, Massachusetts. The high-level decisions were made there.")], which are insufficient to establish jurisdiction. See Kuan Chen, 956 F.3d at 56.

business," in some cases "a defendant corporation's general business operations in a state in which it is neither incorporated nor headquartered 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Kuan Chen, 956 F.3d at 57 (quoting Daimler, 571 U.S. at 139 n.19).

Because AngioDynamics and Navilyst are both incorporated in Delaware and have their principal places of business in New York, the Court can exercise general personal jurisdiction over them only if their "general business operations" here are "so substantial and of such a nature as to render [them] at home" in Massachusetts. Kuan Chen, 956 F.3d at 57 (quoting Daimler, 571 U.S. at 139 n.19). They are not. Cf. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447–48 (1952) (finding that a company was subject to general jurisdiction in Ohio where the company had ceased operating in the Philippines because of World War II and the president of the company relocated to Ohio and conducted business from an office there).[4]

### 2. Specific Jurisdiction

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Swiss Am. Bank, Ltd., 274 F.3d at 618 (quoting Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)). For the Court to exercise specific personal jurisdiction over Defendants consistent with the Due Process Clause, each of three conditions must be satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the [Defendants'] forum-state activities. Second, the [Defendants'] in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the [Defendants'] involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

---

[4] The Supreme Court has described Perkins as the "textbook case of general jurisdiction." Daimler, 571 U.S. at 129.

11

Daynard, 290 F.3d at 60 (quoting Foster-Miller, 46 F.3d at 144). The inquiry "is 'not susceptible [to] mechanical application,'" PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (quoting Kulko v. Superior Ct. of Cal., 436 U.S. 84, 92 (1978)), rather, "[e]ach case requires an individualized weighing of the material facts," United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485–86 (1985)).

Mr. Harness' claims do not arise out of, or relate to, Defendants' Massachusetts contacts. As noted above, Mr. Harness has failed to offer evidence supporting his assertions that Defendants researched, developed, designed, tested, or manufactured the Device in Massachusetts. Further, all key events related to this case occurred elsewhere. Defendants manufactured the Device in New York, [ECF No. 21-1 ¶ 17], and Mr. Harness (1) lives, (2) was implanted with the Device, and (3) was allegedly injured and treated, in Tennessee, [ECF No. 1-3 ¶¶ 2, 47–49]. Thus, there is no perceptible connection between the work that Defendants do in Massachusetts and Mr. Harness' claims. See Ford Motor Co. v. Mont. Eighth Judicial Court, 141 S. Ct. 1017, 1025 (2021) (noting that for specific personal jurisdiction to attach, "there must be 'an affiliation between the forum and the underlying controversy'" (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty., 137 S. Ct. 1773, 1780 (2017))). Without such a connection, Mr. Harness cannot satisfy the relatedness prong of the specific personal jurisdiction analysis.[5] See Kingston, 2021 WL 3022320, at *7–8 (finding that plaintiff, who lived in

---

[5] Mr. Harness' reliance on Ford Motor Co., see [ECF No. 25 at 1–2], is misplaced. In that case, the Supreme Court held that "[w]hen a company . . . serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." 141 S. Ct. at 1022. Here, Mr. Harness is not seeking to sue Defendants in his home state or the state where he was allegedly injured. For that reason, the "relationship among the defendant, the forum[], and the litigation" that the Supreme Court concluded was "close

Kentucky and was allegedly injured by the Device there, had failed to demonstrate that AngioDynamics and Navilyst were subject to specific personal jurisdiction in Massachusetts).

Because a plaintiff seeking to establish specific personal jurisdiction must satisfy all three prongs, see Daynard, 290 F.3d at 60, and Mr. Harness has failed to satisfy the first, the Court need not consider the other two.

### D. Jurisdictional Discovery

Mr. Harness contends that he should be permitted to conduct jurisdictional discovery if the Court finds that he has failed to meet his burden on the jurisdiction front. [ECF No. 14 at 10]. The First Circuit has "long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" Swiss Am. Bank, 274 F.3d at 625 (quoting Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir. 1997)). "However, that entitlement is not absolute. . . . [E]ven when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the district court still has broad discretion to decide whether discovery is required." Id. at 625–26 (citations and internal quotation marks omitted). Further, "[i]n addition to making a colorable claim, it is also incumbent upon the plaintiff to 'present facts to the court which show why jurisdiction would be found if discovery were permitted.'" Rain ex rel. Crandall v. Conn. Gen. Corp., No. 17-cv-30115, 2019 WL 7604856, at *7 (D. Mass. Aug. 6, 2019) (quoting Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007)).

---

enough to support specific jurisdiction" in Ford Motor Co., id. at 1032, does not exist here. See also Kingston, 2021 WL 3022320, at *7–8 (distinguishing Ford Motor Co.).

Here, Mr. Harness has failed to make a "colorable case for the existence of" personal jurisdiction, and the Court declines to exercise its discretion to grant jurisdictional discovery. Swiss Am. Bank, 274 F.3d at 625 (citations and internal quotation marks omitted).  Mr. Harness has not identified with any specificity what discovery he would seek and how it would support a finding of personal jurisdiction.[6]  Further, given Mr. Trowbridge's affidavit, discovery is unlikely to result in a finding that the Court has personal jurisdiction over Defendants.  Accordingly, Mr. Harness' request for jurisdictional discovery is DENIED.

### E.  Transfer

Even though it lacks personal jurisdiction over Defendants, the Court could transfer the case to another district to cure a lack of jurisdiction.  See 28 U.S.C. § 1631.  Nevertheless, because (1) neither party has suggested transfer, (2) Mr. Harness originally sought to litigate in state court, and (3) there appear to be multiple potentially appropriate fora (including federal and state courts in Delaware, New York, and Tennessee), the Court will dismiss the case without prejudice to allow Mr. Harness to file elsewhere (if he wishes to do so).

## IV.  CONCLUSION

For the reasons set forth above, Mr. Harness' motion for remand, [ECF No. 17], is DENIED, and Defendants' motion to dismiss for lack of personal jurisdiction, [ECF No. 9], is GRANTED.  Mr. Harness' complaint, [ECF No. 1-3], is DISMISSED without prejudice.

**SO ORDERED.**

September 28, 2021                                      /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE

---

[6] Mr. Harness' jurisdictional discovery argument consists of a single, conclusory sentence.  See [ECF No. 14 at 10 ("Should this Court find [Mr. Harness'] proffered facts insufficient to support prima facie finding of jurisdiction at this stage, jurisdictional discovery is warranted.")].